**Verne HOUSTON, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF TREASURY et al., Defendants.**

**Civ. A. No. 78–0541.**

United States District Court, District of Columbia.

Nov. 29, 1979.

William E. Persina, Washington, D. C., for plaintiff.

John J. McCarthy, Edward J. Snyder, Beth A. Kaswan, Tax Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

Plaintiff Verne Houston brings this action against the Department of the Treasury and the Internal Revenue Service (IRS) for damages and injunctive relief under the Privacy Act of 1974, 5 U.S.C. § 552a. Mr. Houston, an IRS agent, alleges that the Service violated the notice provisions of the Act, 5 U.S.C. § 552a(e)(3),[1] by failing to give written notice that certain information supplied by him to his supervisors concerning his case assignments was placed in his personnel file and later used against him in adverse personnel action. The parties have filed cross motions for summary judgment. Because the Court finds that the collection of this type of information does not require that the (e)(3) notice be given; that the Privacy Act does not provide injunctive relief to remedy this type of violation; and, that plaintiff has already been fully compensated through the administrative process, summary judgment is granted for the defendants and this proceeding is dismissed.

---

1. 5 U.S.C. § 552a(e)(3) provides:

(e) Agency requirements

Each agency that maintains a system of records shall—

\* \* \* \* \* \*

(3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—

(A) the authority (whether granted by statute, or by executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

(B) the principal purpose or purposes for which the information is intended to be used;

(C) the routine uses which may be made of the information, as published pursuant to paragraph (4)(D) of this subsection [requiring annual notice of the type of records kept by an agency]; and

(D) the effects on him, if any, of not providing all or any part of the requested information.

### Background Facts

The parties' supporting papers disclose the following uncontested facts. Plaintiff, a GS–13 Revenue Agent in the Omaha office of the IRS, was assigned to audit the tax returns of business enterprises. Beginning in 1974, he met regularly with his supervisor, and discussed and reviewed with him the cases assigned to him. The supervisor made informal notes on these discussions and placed them in plaintiff's personnel file. In June, 1976 plaintiff was transferred to a new section under the direction of a second supervisor who likewise kept and maintained notes on discussions and reviews with the plaintiff of his work. In early 1977, this second supervisor informed the plaintiff that he had recommended his demotion because of the quality of his work performance. Plaintiff orally responded to charges at an administrative hearing. Thereafter, the Director for the Omaha office demoted him to a GS–12 level. In making that determination, the Director relied, at least in part, upon the notes maintained by the two supervisors. Subsequently, a Civil Service Commission Appeals Officer, citing procedural defects in the original proceeding, overturned the demotion. The procedural defect noted was the fact the Appeals Officer found that the plaintiff had not been allowed to see the case files on which he had been working at the time his performance was alleged to be unacceptable. The Appeals Review Board of the Civil Service Commission sustained this decision and plaintiff has since been ordered reinstated at his former level with full back pay.

Invoking the Privacy Act, Mr. Houston seeks to enjoin the IRS from using the supervisors' notes in future proceedings against him and he also seeks damages for injury to reputation, and for "mental anguish and physical distress." The information in question is preserved on a series of typed and handwritten notes recording the substance of conversations between plaintiff and his supervisors concerning four tax audits. Plaintiff does not contend that he provided all information recorded in each note; instead, he specifies certain statements or calculations which he claims he provided to the supervisor. For example, information provided by plaintiff in one note indicates that although plaintiff could not "clear" a case by the end of the week, he believed it could be done by the end of the following week. Information recorded in another shows that plaintiff was in the process of writing up a report on his current audit after identifying all the issues involved. Other notes contain plaintiff's reports on the status of certain audits and include worksheets showing calculation of depreciation and bad debt reserves.[2]

Some information is embodied in more formal memoranda sent to the plaintiff by his supervisors summarizing their discussions. Like the other notes, the specified information contained in these memos amounts to plaintiff's estimates on hours expended on certain audits and his identification of issues involved. One memo from a supervisor, dated February 12, 1976, indicated a belief that the plaintiff was not using his time efficiently. But plaintiff does not identify this, or any other evaluative portion of the notes, as information on which he bases his Privacy Act claims. Instead he rests it solely on the information he supplied concerning his work on the audits.[3]

Defendants move for summary judgment on several grounds: that the Privacy Act only protects personal information and that Congress never intended to require a supervisor to give (e)(3) notices to employees before soliciting information concerning their work assignments; that even if the Act was violated plaintiff has suffered no "adverse effect" redressable under subsection (g)(1)(D)[4] so as to confer jurisdiction

---

2. Plaintiff's Answers to Defendants' Interrogatories Nos. 1 & 3; Defendants' Memorandum of Points and Authorities In Support of Defendants' Motion for Summary Judgment, App. 1.

3. Id.

4. Section 552a(g)(1) provides:
 Whenever any agency
 \* \* \* \* \* \*

upon this Court; and finally, that plaintiff has already received back pay and reinstatement to his former grade level, and he is not entitled to injunctive or any further relief.

In his cross motion for summary judgment Mr. Houston argues for a broader definition of information and a correspondingly broader construction of the notice provision which would require an (e)(3) notice whenever an official asks any individual to provide any information to the government. He also alleges, for the first time,[5] that the supervisors knew that these notes would be used as the basis for an adverse action proceeding file and that therefore, the notes have always been protected information within a "system of records" maintained by the agency. Because it is admitted that plaintiff was never given notice, he claims he is entitled to judgment as a matter of law.

### Legal Analysis
#### A.

The necessary initial inquiry is whether this type of information comes within the protection of the statute. The Privacy Act requires that "each agency that maintains a system of records" must give notice to "each individual whom it asks to supply information" of the authority for the request, the uses to which the information will be put, and the consequences of refusing to supply it. 5 U.S.C. § 552a(e)(3). The nature of the "records" and the information contained therein thus determines the applicability of the notice provision. The Act defines a "record" as:

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not

limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4). While this definition gives some indication of the type of information protected, it is, by its terms, not exclusive.

Since there is little if any, relevant judicial precedent, the Court turns to the legislative history as a source of information and a basis of interpretation. The history of the Act does not indicate that the Congress intended to protect the exchange of the type of information complained about in this proceeding. Rather, its chief concern was misuse of the enormous amounts of personal information about individuals collected by government agencies. In particular the legislative history reveals a fear that increased use of computers to store large amounts of data enhanced the danger that sensitive information concerning an individual could be collected by an agency for one purpose and used by another agency without that individual's knowledge or consent. The official Findings reflect these concerns:

> Sec. 2.(a) The Congress finds that—
>
> (1) the privacy of an individual is directly affected by the collection, maintenance, use, and dissemination of *personal* information by Federal agencies;
>
> (2) the increasing use of computers and sophisticated information technology, while essential to the efficient operations of the Government, has greatly magnified the harm to individual privacy that can occur from any collection, maintenance, use, or dissemination of *personal*

---

(D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency

. . . .

**5.** In his amended complaint, plaintiff contends that the notes were kept solely as "memory joggers" for the supervisors' personal use. In his motion for summary judgment, however,

plaintiff contends that the supervisors were "at all times consciously and intentionally, the first information gathering step of the agency in its effort to demote plaintiff." Plaintiff's Memorandum of Points and Authorities, 15. The discrepancy is immaterial; since the Court finds that the information contained in these notes is not protected by the Privacy Act, defendants would be entitled to summary judgment in either situation.

information . . .. [emphasis added].

Privacy Act, Pub.L. No. 93–579 § 2(a), 88 Stat. 1896 (1974). These provisions are a clear indication that the Congress did not intend the Act to apply to all information in the Government's hands.[6] Rather, Congress sought to avoid indiscriminate circulation of sensitive information about an individual's private affairs among government agencies.

Indeed, the history of the notice provision itself confirms the conclusion that the Act does not cover all types of information. It was not contained in the original bill, S. 3418. The earliest version was inserted in the bill by the Senate Committee on Government Operations.[7] Section 201(a) of that version of the bill provided:

Each federal agency shall . . .

(3) inform any individual requested to disclose *personal* information whether that disclosure is mandatory or voluntary, by what statutory authority it is solicited, what uses the agency will make of it, what penalties and specific consequences for the individual, which are known to the agency, will result from nondisclosure, and what rules of confidentiality will govern the information. [emphasis added].

Section 301(2) of that bill defined "personal information" as

any information that identifies or describes any characteristic of an individual, including but not limited to, his education, financial transactions, medical history, criminal or employment record, or that affords a basis for inferring personal

characteristics, such as finger or voice prints, photographs, or things done by or to such individual; and the record of his presence, registration or membership in an organization or activity, or admission to an institution.

The notice provision that was enacted, however, does not include the modifier "personal" before the word "information."[8] Plaintiff argues that this change indicates Congress' desire to broaden the type of information requests which would trigger the notice provision.

Standing alone, this change might indeed be persuasive evidence of plaintiff's position. However, the enacted notice provision must be read in conjunction with the definition of "record." This definition was adopted by the Senate and accepted by the House shortly before the final Act was passed. A Committee staff analysis, inserted in the *Congressional Record* by Representative Moorhead, states that "[T]he [definition of record] was adopted to more closely reflect the definition of 'personal information' as used in the Senate bill."[9]

■ Reading these sections in light of the legislative history then, it is clear that the Act protects only "personal" information, and while the language of the statute itself suggests that this definition should not be read too restrictively, it plainly does not encompass the type of information supplied by plaintiff to his supervisors, information which plaintiff himself does not characterize as "personal."[10] The information transmitted here relates directly to official government business. Standing by

---

**6.** Statements of individual members closely associated with the Act support the conclusion that the Act does not cover the type of transaction and information at issue here. Representative Moorhead, chairman of the subcommittee which conducted the House mark-up of the legislation and who later steered the Act through the House, informed that body shortly before the final vote: "Although this bill is limited to personal information on individuals in federal records, I am sure it is only the first step to strengthen the right of privacy." Legislative History of the Privacy Act of 1974, Source Book on Privacy, Senate Comm. on Gov't Operations & House of Representatives

Comm. on Gov't Operations (1976) [hereinafter Source Book] at 986. The Court believes that any steps to broaden the scope of the Act to the dimensions proposed by plaintiff should be taken by the Congress.

**7.** Source Book at 97.

**8.** *See* footnote 1 *supra.*

**9.** Source Book at 993–94.

**10.** Plaintiff's Answer to Defendants' Interrogatory No. 2.

itself, or otherwise, it reveals nothing about the plaintiff's private affairs so as to trigger the protective provisions of the Privacy Act. The defendants' motion for summary judgment should therefore be granted.

### B.

Even if this Court should find that plaintiff was entitled to a Privacy Act notice under the circumstances here presented, it is doubtful that he would be entitled to relief beyond that already secured through the administrative process.

 Plaintiff seeks both an injunction against future use of the notes and monetary damages. The Privacy Act, however, does not empower courts to enjoin the use of information collected by an agency which has failed to give the required (e)(3) notice. *See Cell Associates v. National Institutes of Health,* 579 F.2d 1155, 1157–62 (9th Cir. 1978). *Cell Associates* involved a suit by a private researcher under contract with the National Institutes of Health to enjoin that institution from releasing an investigative report charging him with "serious improprieties" in the course of his dealings with the Institutes. After carefully analyzing the remedies provisions of the Act the court noted that

> [the] claim for relief arises under subsection (g)(1)(D) and the applicable civil enforcement action is the one authorized in subsection (g)(4). It provides for damages, costs, and attorney fees, where the agency acted in a manner that was intentional or willful. It does not provide for an injunction.

*Id.* at 1159. Since there is no specified remedy for a failure to give the (e)(3) notice, the plaintiff in this action must also look for relief to subsection (g)(1)(D).[11] And as the court in *Cell Associates* pointed out, that subsection does not provide for injunctive relief. There is authority for the proposition that federal courts have such power to protect rights secured by federal statutes, even where such it is not expressly provided. *See Porter v. Warner Co.,* 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946). But where Congress has established a detailed system of remedies, as in the Privacy Act, which provides injunctive relief in some instances but not in others, courts are not free to create additional remedies. *National Railroad Passenger Corp. v. National Assoc. of Railroad Passengers,* 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974). "A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Id.* at 458, 94 S.Ct. at 693. Thus, under the Privacy Act, injunctive relief is available only to order an agency to amend an incorrect record or to allow an individual to inspect his record. *Cell Associates,* 579 F.2d at 1158.

 The only other remedy for any other violation of the Privacy Act is "actual damages sustained by the individual . . . but in no case shall a person entitled to recover receive less than $1,000." 5 U.S.C.

---

11. There is no provision dealing expressly with the failure to give notice. § 552a(g)(1) provides:

> Whenever any agency
> \* \* \* \* \* \*
> (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,
> the individual may bring a civil action against the agency . . . .

Section 552a(g)(4) provides:

> (4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to

the individual in an amount equal to the sum of—

> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recover receive less than the sum of $1,000; and
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

The Court also notes that the statute requires that the violation be "willful or intentional" in order to entitle a plaintiff to damages. Other than the bare allegation of willfulness in his motion for summary judgment, plaintiff has produced little evidence of an intentional failure to give notice.

§ 552a(g)(4)(A). Although the term "actual damages" is not defined in the Act,[12] Congress, concerned about the drain on the treasury created by a rash of Privacy Act suits, indicated its intention to limit "actual damages" to "out-of-pocket" expenses.[13] This limited definition finds further support in the fact that Congress removed early provisions allowing "actual and general" damages [14] and rejected amendments providing for punitive awards, even for egregious violations.[15] Mr. Houston's demands, then, no longer fall within this narrow definition; he has already been awarded back pay through his administrative appeal, and his claims of loss of reputation and emotional distress do not amount to "out-of-pocket" losses.[16] Since it is unable to award plaintiff further relief under the Privacy Act, the Court grants summary judgment for the defendants on this issue as well. There is no need, therefore, to consider whether the alleged violations were "willful or intentional" and whether plaintiff is entitled to a jury trial of his Privacy Act claim.

---

12. Nor does the term "actual damages" have a well-defined meaning in the law in general. 22 Am.Jur.2d *Damages* § 241 (1965).

13. Representative Eckhardt offered the "out-of-pocket" definition in connection with an amendment he had proposed to allow "actual damages" merely on a showing that an agency "had failed or refused to comply with any provision of subsection (g)(1)(B) or (C)." This standard, insisted Eckhardt, would still contain nothing that would provide for any damages beyond plaintiff's out-of-pocket expenses caused by the violation. The House nonetheless rejected this lower standard and insisted on a showing of "willful or intentional" conduct in conjunction with the "actual damage" limitation. Eckhardt's "out-of-pocket" characterization went unchallenged. Source Book at 925–29.

14. *Compare* S. 3418, 93d Cong. 2d Sess. § 303(c)(1) (1974), Source Book at 38, *with* 5 U.S.C. § 552a(g)(4).

15. *See* Source Book at 919–24.

16. Plaintiff's reliance on *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) to expand the meaning of "actual damages" is misplaced. In *Gertz*, the Supreme Court considered the meaning of the term "actual injury" in the context of a libel action and concluded that "the more customary types of actual harm inflicted by *defamatory falsehood* include impairment of reputation . . . and mental anguish and suffering." *Id.* at 350, 94 S.Ct. at 3012 [emphasis added]. This definition of "actual injury" in defamation cases under state law is not controlling in a statutory action for "actual damages" under the Privacy Act, particularly where the legislative history suggests a narrower reading.