James C. POPE, Plaintiff,

v.

Langhorne BOND, et al., Defendants.

Civ. A. No. 84–2922.

United States District Court, District of Columbia.

Aug. 5, 1986.

490

Robert Fleishman, Stephen A. Fennell and Shawn C. Conway, Steptoe and Johnson, Washington, D.C., for plaintiff.

Austin J. Doyle, Jr., Washington, D.C., for defendant Helms.

Philip A. Lacouara and Andrew T. Karron, Hughes, Hubbard and Reed, Washington, D.C., for defendants Onstad, Weithoner, Rock and Driscoll.

Scott T. Kragie, Stuart H. Newberger, Asst. U.S. Attys., Civil Div., Washington, D.C., for defendants Bond, Eckert, Walk, Howe and Forrester.

## MEMORANDUM

FLANNERY, District Judge.

This matter is before the court on both the motions of the Federal Aviation Administration and the individual defendants to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

## I. *Background*

Plaintiff is a former official in the Office of General Aviation of the Federal Aviation Administration ("FAA"). Plaintiff is suing the FAA and various present and former FAA officials in their individual and official capacities. During the 1970's, plaintiff served as Chief of the Industry/Government Liaison Division within the FAA headquarters Office of General Aviation. Plaintiff acted as a consumers' advocate and an ombudsman for members of the general aviation community, analyzing every major FAA research and development program affecting general aviation.

Plaintiff seeks compensatory and punitive damages against defendants for allegedly conspiring to silence plaintiff and ultimately to force his withdrawal from federal service. Specifically, plaintiff alleges that defendants retaliated against him for his public advocacy of an airborne collision system ("ACAS") manufactured by the Honeywell Corporation, known as the "AVOIDS" system. Plaintiff had contended that the AVOIDS system would provide mid-air collision protection for airplanes su-perior to and at a lower cost than a ground-based collision avoidance system being developed in-house by the FAA. Plaintiff contends that he was forced to accept a transfer to Seattle in 1979 and ultimately forced to withdraw from federal service after he began disclosing evidence of alleged FAA mismanagement and the danger of public safety created by FAA's refusal to support or approve the AVOIDS system. Plaintiff spoke out within FAA, to aviation trade journals and consumer groups, and eventually in 1980 to CBS's "60 Minutes". For this, plaintiff says FAA officials harassed him by, inter alia, subjecting him to excessive scrutiny and criticism, alternatively assigning him no work and then too much work, and imposing on him a series of minor disciplinary actions. Plaintiff asserts that from the emotional distress he was caused by defendants' conspiratorial harassment, he had to receive psychiatric treatment. On August 10, 1981, plaintiff went on sick leave from which he never returned to the FAA. On September 20, 1981, plaintiff was admitted to a psychiatric hospital.

On December 16, 1981, plaintiff received a notice of removal from the FAA, effective December 18, 1981. Plaintiff contested the removal in an appeal to the Merit Systems Protection Board ("MSPB") on January 2, 1982. A hearing on the merits was scheduled for August 18, 1982, but on August 16, 1982, the FAA approached plaintiff's counsel with a proposal to rescind the removal action. Plaintiff applied for and received approval for disability retirement and worker's compensation benefits on the grounds that his illness was job-related. The MSPB proceeding was then dismissed on October 13, 1982.

Plaintiff then filed a complaint in this court on September 19, 1984. Plaintiff alleged that there was a conspiracy of FAA officials to silence plaintiff and ultimately to force his withdrawal from federal service. Further, following the recision of his removal and his recuperation, FAA officials thwarted his attempts to return to

FAA employment. Finally, plaintiff alleges that the FAA's actions cast a stigma upon plaintiff's reputation which hindered his efforts to obtain employment outside of FAA.

The original defendants moved to dismiss plaintiff's complaint. On June 20, 1985, this court dismissed some of plaintiff's claims including those related solely to the FAA's attempt to remove him in 1981. *Pope v. Bond*, 613 F.Supp. 708 (D.D.C. 1985) (hereinafter cited as *"Pope v. Bond I"*). The court found that plaintiff had failed to exhaust his administrative remedies regarding the removal, but that since there were no meaningful administrative remedies for the claims regarding harassment and retaliation, these claims were properly before the court.

On January 28, 1986, this court permitted plaintiff to file a second amended complaint. *Pope v. Bond*, C.A. 84–2922, Mem. & Order (D.D.C. Jan. 28, 1986) (hereinafter cited as *Pope v. Bond II*). This amended complaint states in greater specificity the alleged conspiracy by defendants in violation of plaintiff's First and Fifth Amendment rights. Further, it adds claims under 42 U.S.C. §§ 1985(1) & (3) and under 5 U.S.C. § 552a (Privacy Act). Finally, the amended complaint added individual defendants. The original complaint named as individual defendants Langhorne Bond (FAA Administrator from 1977 to 1981), Roland Eckert (Special Assistant to FAA Administrator from January 1978 to 1980), Christian Walk (Director of FAA's Northwest Region from 1977 to 1980), Jonathan Howe (FAA Deputy Chief Counsel from 1978 to 1980), and Michael Forrester (Chief of Appraisal and Planning Staff in the FAA's Northwest Region from 1980 to 1982). The new complaint added individual defendant Clark Onstad (FAA General Counsel from 1977 until 1981) and three career FAA individual defendants who are still with the FAA: Charles Weithoner (FAA Associate Administrator for Administration), Donald Rock (FAA Director of Personnel and Training), and Lionel Driscoll (FAA Chief of Labor Relations Branch of the Personnel Management Operations Division). J. Lynn Helms (FAA Administrator from 1981 to 1984), an original defendant, was dismissed from the case because of a pending bankruptcy action in Connecticut but was brought back into the case after the lifting of the bankruptcy stay.

By April 15, 1986, defendant FAA, defendant Helms, defendants Bond, Eckert, Walk, Howe, and Forrester, and defendants Onstad, Weithoner, Rock and Driscoll separately moved to dismiss the claims brought against them. On May 15, 1986, plaintiff responded to defendants' motions in a single memorandum. On May 30, 1986, most defendant groups separately replied. Oral argument was heard June 6, 1986. Defendants Onstad, Weithoner, Rock, and Driscoll and plaintiffs sought leave to file supplemental memorandums.

## II. *Discussion*

Defendants have suggested late in their pleadings that their motion might be dealt with as one for summary judgment rather than as a motion to dismiss. This court declines to do so. Discovery was stayed in this matter for the purpose of considering defendants' dismissal claims; changing the posture of the motion now without giving plaintiff a chance to conduct some discovery would be unfair and inappropriate.

On a motion to dismiss, the factual allegations of the complaint must be taken as true and any doubts concerning the sufficiency of the claim must be resolved in favor of the nonmovant party. *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C.Cir. 1983). A motion to dismiss is viewed with disfavor and should not be granted unless it appears beyond a doubt that the plaintiff can provide no set of facts in support of his claim which would entitle him to relief. *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985).

The grounds for dismissal set forth by the defendant groups differ, but all fit within five basic issues. These are that: (1) the court should reconsider its ruling in *Pope v. Bond I* that matters other than

plaintiff's removal are properly before the court; (2) the statute of limitations has run as to most of the acts alleged in the complaint and those for which it has not are not a proper basis for this suit; (3) plaintiff has failed to state cognizable claims under 42 U.S.C. § 1985(1) & (3) and 5 U.S.C. § 552a; (4) all of the individual defendants are entitled to qualified immunity for the acts alleged in the complaint; and (5) plaintiff's request for injunctive relief is moot or fails to state a cognizable claim. Each issue will be discussed separately.

## A. *Pope v. Bond I Reconsideration*

■ In response to plaintiff's first amended complaint, defendants argued that the comprehensive scheme of administrative and judicial remedies available to plaintiff against FAA "counsel hesitation" against allowing a supplemental claim for damages against individual defendants. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Pope v. Bond I,* this court found that supplemental damages were appropriate, but agreed with defendants that *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) precluded a *Bivens* supplemental remedy for the allegedly improper removal of plaintiff, since administrative remedies available in the case of removal had not been exhausted. Lesser allegedly improper personnel actions leading up to the removal ("prohibited personnel actions"), however, were found not to have a meaningful administrative remedy, and were therefore properly before this court.

Defendants raise three points in seeking reconsideration of this ruling. First, this court acknowledged in *Pope v. Bond I* that plaintiff could seek injunctive relief against the FAA for interference with his future employment rights. Plaintiff therefore has a meaningful remedy, precluding the need for a *Bivens* action against the individual defendants. Second, the MSPB had before it all the "lessor personnel actions" when plaintiff appealed the removal decision. Given this, and given that plaintiff did not

file suit on any of these actions until years after the removal occurred, these actions should be treated as one bundle, not split into two. Third, this court's reliance in *Pope v. Bond I* on *Borrell v. U.S. International Communication Agency,* 682 F.2d 981 (D.C.Cir.1982) is misplaced because *Borrell* did not involve damage claims (such as exist in the case at bar), but was limited to claims for injunctive relief against the government.

Despite these contentions, this court adheres to its prior ruling. The existence of an injunctive remedy against the FAA does not have any bearing on the need for a compensatory damages remedy against the individual defendants. Equitable relief addresses the wrong in an entirely different manner. Plaintiff seeks relief not just from future interference with his employment rights, but also for past violations of constitutional and civil rights. *Bush* does not foreclose a federal employee from pursuing a *Bivens* remedy whenever his injury arises from personnel actions. *Bush* involved a demotion for which Congress had constructed an elaborate remedial system to handle an employee's complaint. 462 U.S. at 388, 103 S.Ct. at 2416–17. The prohibited personnel practices here fit into no such scheme. Further, the fact that the MSPB had before it the prohibited personnel practices as well as the removal action itself does not create a single "bundle" of claims which are all now precluded by *Bush.* The MSPB appeal was dismissed when plaintiff's removal was rescinded by defendants. Plaintiff has had no meaningful opportunity for review of his constitutional claims regarding the alleged prohibited personnel practices. As noted in *Pope v. Bond I,* to the extent that plaintiff was required to allow the OSC an initial opportunity to examine his retaliation claims regarding transfer and harassment, it is apparent ultimately that OSC did investigate such complaints and find that they were unsubstantiated. *Pope v. Bond I,* at 712; Complaint, ¶ 192. *Borrell* and its progeny support the idea that a federal whistleblower must be provided with a meaningful remedy against the government when his

rights are violated, whether it be damages or injunctive relief. Plaintiff is now properly before this court regarding these allegedly improper personnel practices.

### B. *Statute of Limitations*

 When no federal statute of limitations governs the period of repose for actions brought under the Civil Rights Acts or under the rationale of *Bivens,* a federal court must look to the limitations period applicable to the most nearly analogous state cause of action. *Hobson v. Wilson,* 737 F.2d 1, 32 (D.C.Cir.1984), *cert. denied, Brennan v. Hobson,* —— U.S. ——, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). For the same general reasons that § 1983 claims are best characterized as personal injury claims, *Wilson v. Garcia,* 471 U.S. 261, 275–78, 105 S.Ct. 1938, 1947–48, 85 L.Ed.2d 254 (1985), plaintiff's § 1985 and *Bivens* claims are also best characterized as personal injury claims. *Hobson v. Brennan,* 625 F.Supp. 459 (D.D.C.1985) (Oberdorfer, J.). The problems that concerned Congress in passing § 1985 and those that gave rise to *Bivens'* causes of action basically sound in tort. While some aspects of plaintiff's claims may appear more in the nature of defamation (which often carries a shorter time limitation under state law than other torts), for the same reasons of uniformity espoused in *Wilson,* this court utilizes a more simple, broad characterization of the claims. On this basis, the three-year residual limitation period provided in 4 D.C.Code Ann. § 12–301(8) controls this case inasmuch as the alleged conspiracy was centered in Washington, D.C.

 The original complaint was filed on September 19, 1984. The law in this circuit is that the limitations period for bringing a "civil damages action for conspiracy runs separately from each overt act that is alleged to cause damage to the plaintiff." *Lawrence v. Acree,* 665 F.2d 1319, 1324 (D.C.Cir.1981). All alleged acts committed on or after September 19, 1981 in furtherance of the alleged conspiracy state timely causes of action. The new claims filed by plaintiff through amendment of the complaint on January 28, 1986 fit within this tolling period because they relate back to the original complaint within the meaning of Federal Rules of Civil Procedure Rule 15(c). *See Pope v. Bond II.* The newly-added defendants are also subject to this tolling period because where a plaintiff brings an action against a government agency, Rule 15(c) specifically provides that the two notice requirements of the rule are satisfied with respect to the addition of agency defendants. Rule 15(c) states:

> The delivery or mailing of process to the United States Attorney ... or an agency ... who would have been a proper defendant if named, satisfies (the notice requirements) with respect to ... any agency or office thereof to be brought into the action as a defendant.

In *Fludd v. U.S. Secret Serv.,* 102 F.R.D. 803, 805 (D.D.C.1984), this court interpreted Rule 15 as allowing a by-pass of the notice requirement in certain circumstances when the defendant is the government, when notice of the claim was timely given government counsel, and when the defendants being brought into the case are government officials. In this case, the fact that the government has hired outside counsel to represent these defendants is unimportant. The administrative record shows that as government officials within FAA, these defendants were aware of the OSC investigation into plaintiff's claims and of plaintiff's claims against the FAA. Yet, the newly-added defendants' role in the alleged conspiracy has only recently been revealed to plaintiff. Though they have retained outside counsel at the government's expense, all four defendants would typically be represented by the U.S. Attorney's office, as occurred in *Fludd.* Given this, and given that discovery has not yet begun in this case, there appears to be no meaningful prejudice in bringing these defendants into the case and subjecting them to the original tolling of the statute of limitations on a relation-back basis.

Alleged acts in furtherance of the alleged conspiracy to harass plaintiff did occur after September 19, 1981. These in-

cluded: (1) the ordering of plaintiff back to work on September 21, 1981 despite his mental condition (Complaint, ¶ 166); (2) the issuance of a notice of proposal to remove plaintiff on September 28, 1981 (Complaint, ¶ 170); (3) the placing of plaintiff on AWOL status on September 28, 1981 (Complaint, ¶ 167); (4) the subjection of plaintiff to needless examination by an FAA-contracted psychiatrist (Complaint, ¶ 168); and (5) the improper removal of plaintiff from the FAA's payroll on September 21, 1981 (Complaint, ¶ 172). Defendants Helms, Forrester, Weithoner, Howe, Rock and Driscoll are alleged to have done or approved of all of these acts in furtherance of the conspiracy to harass plaintiff (Complaint, ¶ 175). As such they are viewed by this court as either direct or "headquarters" defendants who fall within the meaning of co-conspirators engaged in furthering the conspiracy within the statutory time period. *Hobson v. Wilson*, 737 F.2d at 55–57; *Lawrence v. Acree*, 665 F.2d at 1324 (plaintiff must allege and prove that each defendant furthered the conspiracy during the statutory period).

Damages for actions taken by defendants prior to September 19, 1981, are time-barred unless there was fraudulent concealment of the conspiracy by defendants, in which case the statute only starts running once the fraud is discovered. *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874). Though plaintiff argues otherwise, there does not appear to be in this case either the fraudulent concealment or "self-concealing" of the kind necessary to toll the statute at an earlier time. *See Hobson v. Wilson*, 737 F.2d at 33–37 (fraud has to have been concealed or be of such character as to conceal itself). While some information has been withheld from plaintiff pursuant to his FOIA/PA requests, plaintiff's own submissions show that he knew of the basic acts alleged in the complaint as early as 1980. Certainly upon voluntarily dismissing his MSPB hearing, plaintiff was aware of what had happened to him and could have sued on the basis that the transfer to Seattle and other alleged harassments were prohibited personnel practices. Such suit would have uncovered the details plaintiff says only recently surfaced. No claim of fraudulent concealment has ever been lodged by plaintiff; it has only arisen in response to defendants' contentions regarding the statute of limitations.

▆ Plaintiff also argues that the government's continued refusal to provide plaintiff with the relief he claims he is due constitutes a "continuing conspiracy" to deny plaintiff his constitutional rights, thus bringing the case within the "continuing tort" doctrine. *See Page v. United States*, 729 F.2d 818, 822 (D.C.Cir.1984). The continuing tort doctrine states that a cause of action for a continuous tort accrues and the limitations period begins when the tortious conduct ceases. Generally, the doctrine applies only to acts which are by nature of a repetitive character and for which no single act can be identified as the cause of significant harm. *Id.* A continuous, cumulative chain of tortious activity, however, does not include the uncorrected denial of one's constitutional rights, even when done by a conspiracy over time. If it did, then all civil conspiracy cases would fall within its ambit, greatly expanding the doctrine beyond its original intent. *See Fitzgerald v. Seamans*, 553 F.2d 220, 230 (D.C.Cir.1977) ("the mere failure to right a wrong and make plaintiff whole cannot be a continuing wrong which tolls the statute of limitations for that is the purpose of any lawsuit and the exception would obliterate the rule"). The statute of limitations in such cases would become virtually meaningless. This is not a case of some unknown injury cumulating within plaintiff due to some kind of repeated exposure: plaintiff was basically well aware of the alleged acts in furtherance of the alleged conspiracy which occurred prior to 1981.

▆ Under conspiracy law, a co-conspirator may avoid liability for subsequent conspiratorial acts by withdrawing from the conspiracy. *See United States v. U.S. Gypsum Co.*, 438 U.S. 422, 464–65, 98 S.Ct. 2864, 2887, 57 L.Ed.2d 854 (1978) (an af-

firmative act inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators establishes withdrawal). Plaintiff has not alleged any involvement in the conspiracy by defendants Bond, Eckert, or Onstad following their resignations from the FAA in January of 1981, nor by defendant Walk following his resignation in May of 1980. This court finds that, as a matter of law, resignation from the FAA indicates a complete withdrawal from any conspiracy within the FAA against plaintiff, just as it would in a criminal case. *See United States v. Steele,* 685 F.2d 793 (3d Cir.), *cert. denied,* 459 U.S. 908, 103 S.Ct. 213, 74 L.Ed.2d 170 (1982) (officer's resignation from corporation is prima facie withdrawal from criminal conspiracy absent some conduct in furtherance of conspiracy subsequent to resignation). Since any acts committed by them must have occurred prior to the beginning of the limitations period, all claims against defendants Bond, Eckert, Onstad, and Walk are dismissed.

### C. *Civil Rights and Privacy Acts Claims*

#### 1. *42 U.S.C. § 1985(1)*

Plaintiff alleges that defendants conspired to punish him for lawfully discharging his duties as a federal official and to prevent his further "whistleblowing" to members of Congress and others (Complaint, ¶¶ 17–19, 216). To state a cause of action under § 1985(1), a plaintiff must allege and prove a conspiracy (1) to prevent any person by force, intimidation or threat from holding federal office or (2) to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof. 42 U.S.C. § 1985(1).

This circuit has not squarely addressed whether § 1985(1) applies to internal disputes between federal employees and their supervisors, though the court of appeals has apparently assumed that they are within the scope of the statute. *Lawrence v. Acree,* 665 F.2d at 1322, 1327 (federal employee's § 1981(1) claim is valid but individual government defendants are immune).

The original defendants argue that the statute does not cover internal personnel disputes *simpliciter* and cite Judge Wald's concurrence in *Lawrence. Id.,* at 1328–29. Other court's have split over the issue. *Santistevan v. Loveridge,* 732 F.2d 116 (10th Cir.1984) (§ 1983(1) claim fails as an internal personnel problem lacking racial animus); *Perry v. Golub,* 400 F.Supp. 409 (N.D.Ala.1975) (reassignment of plaintiff due to whistleblowing activities states a valid 1985(1) claim).

The wording of the statute suggests that it is designed to protect against all conspiracies seeking to impede the operation of government through interference with an official in the discharge of his official duties. *See Lawrence v. Acree,* 665 F.2d at 1328 (Wald, J. concurring) (citing with approval *Perry v. Golub* ). Generally these Reconstruction statutes are accorded a sweep as broad as their language. *Griffin v. Breckenridge,* 403 U.S. 88, 97, 91 S.Ct. 1790, 1796, 29 L.Ed.2d 338 (1971). Unlike a claim arising under § 1985(3), *see infra,* there is no requirement under § 1985(1) that plaintiff allege racial or other class-based, invidiously discriminatory animus. *Kush v. Rutledge,* 460 U.S. 719, 726, 103 S.Ct. 1483, 1487–88, 75 L.Ed.2d 413 (1983).

Yet it is still necessary to determine whether the kind of conduct alleged in this case brings the complaint within the intent and meaning of § 1985(1). An analysis of the history of the section suggests that in addition to actions alleging conspiracies against federal employees based on racial or class-based animus, § 1985(1) may have been designed to protect federal officers against interference from persons *outside* the federal government. The section was not intended, however, to handle causes of action for misconduct by supervisors within a government agency. *Lawrence v. Acree,* 665 F.2d at 1328–29 (Wald, J. concurring). Construed in a light most favorable to plaintiff, this case involves no racial animus and no threat to a federal official from some out-

side conspiracy designed to impede the performance of his duties. As such, this court finds that plaintiff's claim fails under § 1985(1).

### 2. *42 U.S.C. § 1985(3)*

 Plaintiff alleges that defendants conspired to remove him because of his membership in the congressionally-identified class of "whistleblowers" (Complaint, ¶ 214). To state a cause of action under § 1985(3), a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. 42 U.S.C. § 1985(3). While this provision encompasses both private conspiracies and conspiracies made under state and federal laws, it is equally clear that the provision does not apply to all conspiratorial tortious interference with the rights of others, but only to those motivated by some class-based, invidiously discriminatory animus. *Griffin*, 403 U.S. at 101–02, 91 S.Ct. at 1797–98; *Hobson v. Wilson*, 737 F.2d at 14, 20–24.

 The question, then, is whether § 1985(3) encompasses conspiracies motivated by an "anti-whistleblower" bias. The Supreme Court has explicitly reserved opinion on whether the statute reaches conspiracies directed at nonracial classes. *Griffin*, 403 U.S. at 102 n. 9, 91 S.Ct. at 1798 n. 9, but has rejected a claim that it covers conspiracies aimed at the economic class of non-union members. *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). This circuit has recognized that political groups may define classes protected by § 1985(3). *Hobson v. Wilson*, 737 F.2d at 21. In *Hobson*, the court of appeals did not reject this court's finding that:

> The cases now make it plain that it is the agreement *vel non* among the alleged conspirators to single a particular group

or class for discriminatory interference with constitutional rights that should itself define the class for purposes of section 1985(3). If a conspiracy actionable under section 1985(3) does exist, it will have defined for itself the group or class of persons it intends to victimize.

*Hobson v. Wilson*, 556 F.Supp. 1157, 1167 (D.D.C.1982) (Oberdorfer, J.). While some circuits have found that § 1985(3) encompasses conspiracies against political groups, *see, e.g., Keating v. Carey*, 706 F.2d 377, 386–88 (2d Cir.1983) (§ 1985(3) addresses non-racial hostility against Republicans), other circuits have concluded that § 1985(3) does not reach non-racial conspiracies. *See, e.g., Harrison v. KVAT Food Management, Inc.*, 766 F.2d 155, 156 (4th Cir.1985). Plaintiff argues that the legislative intent of Congress in passing § 1985(3) in the wake of the Civil War was to provide relief to all individuals suffering under conspiracies designed to intimidate political groups from exercising their First Amendment rights.

The central concern of § 1985(3) was with "combatting the violent and other efforts of the Klan and its allies to resist and to frustrate the intended effects of the Thirteenth, Fourteenth, and Fifteenth Amendments." *United Bhd. of Carpenters*, 463 U.S. at 837, 103 S.Ct. at 3360. Thus, the coverage of § 1985(3) should be determined by the principle underlying its adoption: the governmental determination that some groups require and warrant special federal assistance in protecting their civil rights. *See DeSantis v. Pacific Tel. & Tel. Co.*, 608 F.2d 327, 333 (9th Cir.1979). There is no question that Congress was concerned not just with blacks suffering from intimidation, but also with white Republicans ("Carpetbaggers") who were subject to conspiracies by the Ku Klux Klan. *See generally* Note, *The Class-Based Animus Requirement of 42 U.S.C. § 1985(3): A Limiting Strategy Gone Awry?*, 84 Mich.L.Rev. 88 (1985); Comment, *A Construction of Section 1985(c) in Light of Its Original Purpose*, 46 U.Chi.L.Rev. 402 (1979); Comment, *Private Conspiracies to*

*Violate Civil Rights,* 90 Harv.L.Rev. 1721 (1977). Hence, the language of the statute was meant to be broader than just protection against racial bias.

Since the Civil Service Reform Act of 1978 created procedural safeguards for federal government whistleblowers, 5 U.S.C. §§ 1201–09, Congress has determined that these individuals deserve special protection. Plaintiff urges this court to find that protection for this class includes § 1985(3) coverage. *Lapin v. Taylor,* 475 F.Supp. 446 (D.Hawaii 1979) (whistleblowers as a class are within the meaning of § 1985).

This court declines to construe § 1985(3) to reach conspiracies against federal whistleblowers. The original animus with which Congress was concerned in passing this section was the animus against blacks and their sympathizers, which can include Republicans as a class. But just as the Supreme Court is unwilling to construe conspiracies aimed at the economic class of non-union members (despite a variety of Congressional legislation protecting workers) as within the scope of § 1985(3), so is this court unwilling to construe conspiracies aimed at federal whistleblowers (despite a variety of Congressional legislation protecting federal employees) as within the scope of § 1985(3). § 1985(3) was not intended to provide a federal remedy for "all tortious, conspiratorial interferences with the rights of others." *Griffin,* 403 U.S. at 101, 91 S.Ct. at 1798. Nor is being a part of a group otherwise statutorily protected by Congress enough.

In *Griffin,* the Supreme Court derived the class-based animus requirement from § 1985(3)'s "equal protection" and "equal privileges and immunities" language. *Griffin,* 403 U.S. at 101–02, 91 S.Ct. 1798. That reasoning suggests that § 1985(3) should be construed by reference to the same language in the Fourteenth Amendment. Accordingly, § 1985(3)'s protection may extend beyond race to groups who merit "heightened scrutiny" standards of equal protection: groups based on national origin, gender, alienage, and illegitimacy,

as well as discrete and insular minorities. *See Browder v. Tipton,* 630 F.2d 1149, 1152–53 (6th Cir.1980); *DeSantis,* 608 F.2d at 333. But § 1985(3) does not extend to conspiracies against whistleblowers. There must be a requirement of discriminatory motivation of the type that centrally concerned Congress in enacting § 1985(3). *See generally United Bhd. of Carpenters,* 463 U.S. 825, 103 S.Ct. 3352. That motivation is absent in this case; plaintiff's claim under § 1985(3) must fail.

### 3. *5 U.S.C. § 552a*

The Privacy Act forbids disclosure to any person by a federal government agency of any record which is contained in a system of records regarding an individual without that individual's express permission. 5 U.S.C. § 552a(b). The Act also prohibits maintenance of a record describing how any individual has exercised his First Amendment rights unless authorized by statute or the individual. 5 U.S.C. § 552a(e)(7).

Defendant FAA maintains a system of records containing information concerning plaintiff. Plaintiff alleges that these records, which are protected by the Privacy Act, were willfully disclosed without plaintiff's consent to persons other than FAA employees who needed to see the records in the course of their employment (Complaint, ¶¶ 220, 197(r), 198(c)). Plaintiff also believes various FAA employees communicated to others information about plaintiff speaking out, as a public employee, on matters of public concern.

The FAA maintains three files containing information about plaintiff: plaintiff's personnel folder and two security files which document internal investigations of plaintiff.

■ The FAA argues that plaintiff's claim is defective because suit was not brought within the two-year statute of limitations following the alleged adverse effect. 5 U.S.C. § 552a(g). It is necessary, however, for plaintiff to know or have reason to know that the adverse action oc-

curred. *See Bergman v. United States,* 751 F.2d 314, 316 (10th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985) (the plaintiff must know or have reason to know that the Privacy Act violation exists). First, plaintiff had no reason to be aware that certain records existed. Plaintiff apparently knew of the first security file prior to 1985, but it is not clear why plaintiff should have known of the second security file prior to that time, regardless of the fact that plaintiff was interviewed by an investigator whose report later appeared in the second file. Second, plaintiff apparently was not aware of various disclosures of the contents of the files to others until discovery was conducted in this case. Third, accepting plaintiff's allegations as true, plaintiff's specific requests for access to the FAA files containing the evidence of violations was repeatedly denied by the FAA. Only through compulsory discovery were the security files turned over to plaintiff. This constitutes a willful and material misrepresentation by FAA which prevents the statute of limitations from running until the misrepresentation is discovered. 5 U.S.C. § 552a(g)(5).

The FAA also argues that plaintiff's claim is defective because he has not exhausted his administrative remedies, has not alleged an unlawful disclosure, and has not identified any record kept by the FAA of plaintiff's First Amendment activities. The FAA also asserts that only "out-of-pocket" damages are compensable.

■ This court agrees in part with plaintiff and in part with defendant. Since plaintiff is seeking damages, which cannot be granted by administrative review, he need not exhaust his administrative remedies. 5 U.S.C. § 552a(g)(4); *Nagel v. U.S. Dep't of Health, Education, & Welfare,* 725 F.2d 1438, 1441 (D.C.Cir.1984). Plaintiff recites various incidents of unlawful disclosure: for example, release by defendant Walk of information from plaintiff's security file to people in the Seattle office, including Charles Schroeder, Ronald Hersh, defendant Weithoner, and defendant Howe. Though the FAA argues that Walk's re-view of the file and release of information to defendant Howe was within the scope of their duties, this court cannot say that, at this time, plaintiff has failed to state a claim. Accepting plaintiff's allegations as true, these FAA officials were engaged in an unlawful conspiracy to harass plaintiff. Use of his files to this end is not within their authority because it is not for legitimate administrative reasons. Further discovery may show that there are undisputed facts on this issue which can provide a basis for summary judgment against plaintiff, but dismissal at this time is inappropriate.

■ Plaintiff has alleged that the security file maintained on plaintiff contains records of plaintiff's First Amendment activities: namely, a record of plaintiff's "60 Minutes" interview and certain newspaper articles in which plaintiff is quoted. The FAA argues that these articles contain statements of plaintiff made *at work,* and that a federal agency does not violate the Privacy Act if it records, for evaluative or disciplinary purposes, such statements. *Nagel,* 725 F.2d at 1441–42. Indeed, plaintiff himself has consistently maintained that his statements to the press and to Congress were made in his official agency capacity as ombudsman for general aviation. This court agrees and for this reason dismisses plaintiff's claim regarding records of his First Amendment activities, inasmuch as in these circumstances such records do not violate the Privacy Act.

■ The Privacy Act allows recovery for "actual damages sustained by the individual". 5 U.S.C. 552a(g)(4)(A). Plaintiff states that *Molerio v. Federal Bureau of Investigation,* 749 F.2d 815 (D.C.Cir.1984) (implicitly suggesting that lost earnings may be recoverable) and *Albright v. United States,* 732 F.2d 181, 186 (D.C.Cir.1984) (suggesting that recovery for emotional distress may be recoverable) indicate that actual damages consist of more than "out-of-pocket" damages. Based on the purpose and legislative history of the statute, plaintiff asks this court to construe liberally the meaning of actual damages.

Although the term "actual damages" is not defined in the Act, this court has held that Congress, concerned about the drain on the treasury created by a rash of Privacy Act suits, indicated its intention to limit "actual damages" to "out-of-pocket" expenses. *Houston v. U.S. Dep't of Treasury*, 494 F.Supp. 24, 30 (D.D.C.1979). Thus, "actual damages" does not include damages for emotional trauma, anger, fright, or fear. *Albright v. United States*, 558 F.Supp. 260, 264 (D.D.C.1982), *affirmed*, 732 F.2d 181 (D.C.Cir.1984). Therefore, this court finds that plaintiff is limited to recovery on his Privacy Act claim to out-of-pocket expenses.

D. *Qualified Immunity for the Individual Defendants*

 Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). If the trial judge determines that the law was clearly established at the time the conduct occurred, the government actor is presumed to have known about it unless he can bring forward undisputed facts establishing that because of extraordinary circumstances he neither knew nor should have known of the unlawfulness. *Hobson v. Wilson*, 737 F.2d at 25.

 The acts allegedly committed by defendants Howe, Forrester, Weithoner, Rock, Driscoll, and Helms, if assumed to be true, violated fundamental and well-established constitutional rights. Defendants allegedly conspired to harass plaintiff to punish him and silence him regarding his criticism of the FAA's avoidance system, forcing him out of the FAA with a stigma on his reputation and with little likelihood of being able to return. As a career civil servant who could only be discharged for cause, plaintiff had an established property interest in his employment. *Bishop v. Wood*, 426 U.S. 341, 345 n. 8, 96 S.Ct. 2074, 2078 n. 8, 48 L.Ed.2d 684 (1976). Further, a public employee has a liberty interest in his employment reputation, particularly when forced to find other employment. *Paul v. Davis*, 424 U.S. 693, 701–10, 96 S.Ct. 1155, 1160–65, 47 L.Ed.2d 405 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 572–75, 92 S.Ct. 2701, 2706–08, 33 L.Ed.2d 548 (1972). Finally, the government normally cannot constitutionally punish someone for advocacy of any position unless it amounts to incitement to lawless action. *See Bond v. Floyd*, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966); *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). The government can regulate the speech of its own employees when the state interest in promoting the efficiency of the public services it performs through its employees is significantly greater than the employee's interest, as a citizen, in commenting upon matters of public concern. *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). Yet there is no doubt that—as alleged—plaintiff's speech addresses a matter of considerable public concern (flight safety). In this case, there appears to be no compelling governmental interest in preventing such speech other than to suppress lawful criticism. Plaintiff was a designated FAA ombudsman; if his outspoken views are considered as "undermining" the FAA then so must any critical view made public. Indeed, speech which most embarrasses an agency will often be the most important speech. Plaintiff was not merely airing an internal dispute regarding supervisory powers. *See Foster v. Ripley*, 645 F.2d 1142 (D.C.Cir. 1981). Plaintiff supervised no one and was supervised by only one person. Consequently, defendants' vague contention that transfer was necessary to avoid personnel friction is unpersuasive.

There are no extraordinary circumstances in this case so that defendants could not reasonably have known of the existence of these First and Fifth Amendment rights. Therefore the remaining defendants are not entitled to qualified immunity at this time.

### E. *Equitable Relief*

In *Pope v. Bond I*, this court concluded that no equitable remedy is available to plaintiff in connection with his efforts for reemployment at the FAA or DOT. *Pope v. Bond I*, at 713. Because plaintiff did not have equivalent administrative remedies with respect to reemployment outside DOT, this court found that plaintiff's request for an injunction against interference with his efforts to secure employment outside DOT could proceed. Plaintiff himself withdrew his back pay claim for equitable relief on June 21, 1985. This leaves, therefore, three forms of equitable relief still sought by plaintiff: (1) a name-clearing hearing; (2) correction of plaintiff's employment records; and (3) prevention of defendants' "illegal interference" with plaintiff's attempts to obtain employment in his profession.

Plaintiff is currently employed as a GS–13 employee by NASA. Defendant FAA argues that this employment renders moot any request for an injunction against interference with efforts to secure employment outside DOT. Plaintiff has not alleged that he continues to seek employment elsewhere, nor that if he did defendants would be in a position to interfere with such efforts. Further, the FAA is willing to set up a procedure for handling any inquiries regarding his performance while employed with the FAA through 1981. Finally, the FAA argues that the requests for a hearing and expungement of records are defective claims since they are premised on a due process interest that does not exist. Such an interest only arises when there is a valid claim regarding termination of employment (foreclosed in this case by *Pope v. Bond I*) or an effective foreclosure of other government employment (which has not been shown). Once the interest does arise, the FAA argues that it is satisfied by a hearing before the agency pursuant to the "constitutionally adequate" adverse action procedures, which plaintiff received.

Plaintiff responds that if a public employee loses his job amidst false allegations that impugn the employee's reputation for veracity and moral integrity, and these allegations are made public through adverse referrals to employment opportunities, then the employee has a right to a name-clearing hearing. *See Codd v. Velger*, 429 U.S. 624, 626–27, 97 S.Ct. 882, 883–84, 51 L.Ed.2d 92 (1977); *Board of Regents v. Roth*, 408 U.S. at 572–75, 92 S.Ct. at 2706–08. Plaintiff has pled that defendants' attack on plaintiff's reputation forced him out of the FAA and created a stigma about his name which foreclosed other employment opportunities for years. Further, plaintiff points out that this court has the power to order the correction of employment records that reflect defendants' unconstitutional behavior. *See Hobson v. Wilson*, 737 F.2d at 65. Plaintiff does not want a special procedure set up for handling references to prospective employers. Though currently employed, plaintiff wants the liberty to seek promotion or employment elsewhere without being shadowed by the unconstitutional stigma cast by the FAA's records.

This court already has found that on the facts alleged plaintiff's rights to reemployment outside the FAA are a cognizable liberty interest. Plaintiff has a right to be considered for employment "unfettered by the unconstitutional stigma cast upon his name" by the alleged illegal acts of defendants. Assuming that the facts alleged by plaintiff are true, the presence of false adverse evaluations have been and may continue interfering illegally with plaintiff's promotion and future employment opportunities. If so, a hearing, correction of records, or an injunction may be an appropriate equitable remedy for this court to impose. Consequently, defendant FAA's motion in this respect is denied and plaintiff's claims for injunctive relief may proceed.

### III. *Conclusion*

The claims in this suit and defendants' contentions for why they should be dismissed have been carefully considered. As found in *Pope v. Bond I*, the alleged prohibited personnel actions (actions other

than removal) are properly before this court. Plaintiff's claims, however, are subject to a three-year statute of limitations and therefore only a conspiracy arising out of actions on or after September 19, 1981 is timely. The claims alleged under 42 U.S.C. § 1985(1) & (3) are invalid, as is the Privacy Act claim under 5 U.S.C. § 552a(e)(7) relating to the recording of plaintiff's First Amendment activities. Remaining Privacy Act claims may only seek out-of-pocket expenses. Defendants Bond, Eckert, Walk, and Onstad are dismissed from this suit since as a matter of law they withdrew from the alleged conspiracy. All other claims and parties may proceed.